1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MELANIE L.L.,[1]

                    Plaintiff,

          v.

ANDREW SAUL, Commissioner of
Social Security Administration,

                    Defendant.

Case No. 5:20-cv-00359-JC

MEMORANDUM OPINION

## I.     SUMMARY

On February 22, 2020, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of her application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross-motions for summary judgment (respectively, "Plaintiff's Motion" and "Defendant's Motion").  The Court has taken the parties' arguments under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

---

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1    Based on the record as a whole and the applicable law, the decision of the
2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge
3    ("ALJ") are supported by substantial evidence and are free from material error.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**
5    **DECISION**

6    On July 20, 2015, plaintiff protectively filed an application for Disability
7    Insurance Benefits, alleging disability beginning on January 1, 2014, due to carpal
8    tunnel syndrome, knee and hip injuries, an unknown lump in the collarbone area,
9    and unspecified urinary problems.  (See Administrative Record ("AR") 206-07,
10   272, 276, 280).  An ALJ subsequently examined the medical record and heard
11   testimony from plaintiff (who was represented by counsel) and a vocational expert
12   on October 26, 2018.  (AR 46-77).  On January 14, 2019, the ALJ determined that
13   plaintiff has not been disabled since January 1, 2014, the alleged onset date.  (AR
14   15-28).  Specifically, the ALJ found:  (1) plaintiff has the following severe
15   impairments:  bilateral carpal tunnel syndrome status post right release with palmar
16   fascial fibromatosis and left ring finger Dupuytren's contracture (trigger finger);
17   bilateral shoulder/clavicle problems with pain; lumbar and cervical spine problems
18   with pain; left leg/hip problems with pain; right foot problems with pain; and
19   obesity (AR 18); (2) plaintiff's impairments, considered individually or in
20   combination, do not meet or medically equal a listed impairment (AR 20);
21   (3) plaintiff retains the residual functional capacity[2] to perform a reduced range of
22   light work[3] (20 C.F.R. § 404.1567(b)) (AR 21); (4) plaintiff is capable of

_____

23

24    [2]Residual functional capacity is what a claimant can still do despite existing exertional
25    and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

26    [3]Specifically, the ALJ found that plaintiff can:  (i) lift, carry, push, and pull up to twenty
27    pounds occasionally and ten pounds frequently; (ii) stand and/or walk four hours in an eight-hour
      day; (iii) sit six hours in an eight-hour day; (iv) occasionally climb ramps and stairs, stoop,
28                                                                    (continued...)

performing past relevant work as a "cashier II" as generally performed (AR 26-27); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were inconsistent with the medical evidence and other evidence in the record (AR 22).

On January 7, 2020, the Appeals Council denied plaintiff's application for review of the ALJ's decision.  (AR 1-3.)

## III.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds; 20 C.F.R. §§ 404.1505(a), 416.905.  To be considered disabled, a claimant must have an impairment of such severity that she is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations.  See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520,

---

³(...continued)
kneel, and crouch; (v) never climb ladders, ropes, scaffolds, or crawl; (vi) occasionally reach and work overhead with the upper extremities; (vii) frequently reach in all other directions with the upper extremities; (viii) frequently engage in handling, fingering, and feeling with the upper extremities; and (ix) only occasionally be exposed to extreme cold, vibration, and hazards such as dangerous moving machinery and unsecured heights.  (AR 21).

1   416.920).  The claimant has the burden of proof at steps one through four – *i.e.*,

2   determination of whether the claimant was engaging in substantial gainful activity

3   (step 1), has a sufficiently severe impairment (step 2), has an impairment or

4   combination of impairments that meets or medically equals one of the conditions

5   listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and

6   retains the residual functional capacity to perform past relevant work (step 4).

7   Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The

8   Commissioner has the burden of proof at step five – *i.e.*, establishing that the

9   claimant could perform other work in the national economy.  Id.

10          **B.     Federal Court Review of Social Security Disability Decisions**

11          A federal court may set aside a denial of benefits only when the

12   Commissioner's "final decision" was "based on legal error or not supported by

13   substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

14   F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard

15   of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc.

16   Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks

17   omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably

18   support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75

19   (citations omitted).  Even when an ALJ's decision contains error, it must be

20   affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin.,

21   775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to

22   the ultimate nondisability determination; or (2) ALJ's path may reasonably be

23   discerned despite the error) (citation and quotation marks omitted).

24          Substantial evidence is "such relevant evidence as a reasonable mind might

25   accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining

26   "substantial evidence" as "more than a mere scintilla, but less than a

27   preponderance") (citation and quotation marks omitted).  When determining

28   whether substantial evidence supports an ALJ's finding, a court "must consider the

4

1  entire record as a whole, weighing both the evidence that supports and the evidence
2  that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d
3  995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

4        Federal courts review only the reasoning the ALJ provided, and may not
5  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
6  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
7  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
8  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,
9  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

10       A reviewing court may not conclude that an error was harmless based on
11 independent findings gleaned from the administrative record.  Brown-Hunter, 806
12 F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
13 conclude that an error was harmless, a remand for additional investigation or
14 explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173
15 (9th Cir. 2015) (citations omitted).

16 **IV.   DISCUSSION**

17       Plaintiff claims that the ALJ erred by failing to properly consider (1) the
18 medical opinions and evidence of record; and (2) her subjective symptom
19 testimony.  (Plaintiff's Motion at 3-17).  For the reasons stated below, the Court
20 concludes that a reversal or remand is not warranted.

21       **A.     The ALJ Did Not Err in Considering the Medical Opinions**
22              **1.     Pertinent Law**

23       In Social Security cases, the amount of weight given to medical opinions
24 generally varies depending on the type of medical professional who provided the
25 opinions, namely "treating physicians," "examining physicians," and
26 "nonexamining physicians."  20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502,
27 404.1513(a); 20 C.F.R. §§ 416.927(c)(1)-(2) & (e), 416.902, 416.913(a); Garrison,
28 759 F.3d at 1012 (citation and quotation marks omitted).  A treating physician's

1    opinion is generally given the most weight, and may be "controlling" if it is "well-
2    supported by medically acceptable clinical and laboratory diagnostic techniques
3    and is not inconsistent with the other substantial evidence in [the claimant's] case
4    record[.]"  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Revels v. Berryhill, 874
5    F.3d 648, 654 (9th Cir. 2017) (citation omitted).  In turn, an examining, but non-
6    treating physician's opinion is entitled to less weight than a treating physician's,
7    but more weight than a nonexamining physician's opinion.  Garrison, 759 F.3d at
8    1012 (citation omitted).

9          A treating doctor's opinion, however, is not necessarily conclusive as to
10   either a physical or mental condition or the ultimate issue of disability.  Magallanes
11   v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  An ALJ may
12   reject the uncontroverted opinion of a treating source by providing "clear and
13   convincing reasons that are supported by substantial evidence" for doing so.
14   Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).  Where
15   a treating source's opinion is contradicted by another doctor's opinion, an ALJ
16   may reject such opinion only "by providing specific and legitimate reasons that are
17   supported by substantial evidence."  Garrison, 759 F.3d at 1012 (citation and
18   footnote omitted).

19         An ALJ may provide "substantial evidence" for rejecting a medical opinion
20   by "setting out a detailed and thorough summary of the facts and conflicting
21   clinical evidence, stating his interpretation thereof, and making findings."
22   Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.
23   1998)) (quotation marks omitted).  An ALJ must provide more than mere
24   "conclusions" or "broad and vague" reasons for rejecting a treating or examining
25   doctor's opinion.  See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)
26   (citation omitted).  "[The ALJ] must set forth his own interpretations and explain
27   why they, rather than the [doctor's], are correct."  Embrey v. Bowen, 849 F.2d 418,
28   421-22 (9th Cir. 1988).

                                          6

1

### 2.    Medical Opinions

2    Dr. Lawrence Foster, M.D., who began treating plaintiff's carpal tunnel

3    syndrome and upper extremity pain in July 2014, and has seen her about every

4    three months (*i.e.*, quarterly), completed a medical source statement on May 31,

5    2018. (AR 507-12).  Dr. Foster wrote that plaintiff's symptoms include pain,

6    numbness, and reduced strength in her fingers, hands, arms, and shoulders, with

7    the pain rated a 7-8 out of 10 and worsened by activity. (AR 507, 511).  Dr. Foster

8    opined that plaintiff can sit, stand, or walk for up to two hours in an eight-hour

9    workday; can never lift or carry ten pounds or more; and can frequently balance

10   but can only rarely stoop, crouch, or climb ramps and stairs. (AR 508-09).  He

11   further opined that plaintiff has significant limitations in doing repetitive reaching,

12   handling, and fingering, and is nearly incapable of doing these activities effectively

13   over an eight-hour period. (AR 508, 511-12).  Dr. Foster also indicated that

14   plaintiff would miss work more than three days a month due to her impairments or

15   treatment. (AR 510).

16   Dr. Warren Yu, M.D., an orthopedic surgeon, completed a consultative

17   examination on December 1, 2018. (AR 580-84).  On examining plaintiff's upper

18   extremities, Dr. Yu found full and painless range of motion and no tenderness in

19   the hands, wrists, elbows, and shoulders, although he noted some positive

20   impingement in plaintiff's right shoulder, as well as positive Phalen's and Tinel's

21   signs in both wrists. (AR 582).  Dr. Yu opined that plaintiff can lift up to ten

22   pounds frequently and twenty pounds occasionally; can occasionally engage in

23   manipulative activities such as fingering, handling, feeling, and reaching; can

24   occasionally push or pull; can sit, stand, or walk for six hours in an eight-hour

25   workday; and can occasionally engage in various postural activities, walk on

26   uneven terrain, and work at heights. (AR 584).

27   Dr. S. Brodsky, D.O., a state agency medical consultant, reviewed the record

28   on October 1, 2015, and opined that plaintiff can sit, stand, or walk for six hours in

7

1  an eight-hour workday; can lift or carry fifty pounds occasionally and twenty-five

2  pounds frequently; can frequently balance, stoop, kneel, crawl, and climb ramps or

3  stairs; and has no manipulative limitations.  (AR 83-84).

4  Dr. F. Wilson, M.D., another state agency medical consultant, reviewed the

5  record on April 19, 2016, and opined that plaintiff can sit, stand, or walk for six

6  hours in an eight-hour workday; can lift or carry twenty pounds occasionally and

7  ten pounds frequently; can frequently balance, stoop, kneel, crawl, and climb

8  ramps or stairs; and can only occasionally reach overhead, but otherwise has no

9  manipulative limitations.  (AR 94-96).

10  ### 3.  ALJ's Assessment of Medical Opinions

11  The ALJ gave "very little weight" to the opinion of plaintiff's treating

12  physician, Dr. Foster, on the basis that it was not supported by the evidence.  (AR

13  25).  Among other issues, the ALJ found that Dr. Foster failed to cite any

14  supporting evidence or explain his assessment of extreme limitations; his treatment

15  notes "provide[d] few examination findings, usually noting only tenderness of

16  affected extremities"; his treatment modalities were limited mainly to prescribing

17  opiate pain medications and referring plaintiff for diagnostic imaging and specialty

18  consultations; and there was only limited evidence of specialist treatment after

19  plaintiff last saw her treating orthopedic surgeon in May 2015.  (AR 25).  The ALJ

20  also noted that Dr. Foster's opinion was inconsistent with August 2018

21  electrodiagnostic testing of plaintiff's upper extremities, which "show[ed] only

22  mild left side carpal tunnel syndrome and no evidence of recurrent right carpal

23  tunnel syndrome."  (AR 25; see AR 576-78).

24  The ALJ gave "significant weight" to the opinion of the consultative

25  examining orthopedic surgeon, Dr. Yu, because it was supported by references to

26  specific imaging evidence and detailed examination findings, including "generally

27  normal spinal findings and impingement signs of the shoulders." (AR 25).

28  However, the ALJ noted that Dr. Yu had not reviewed the August 2018

1    electrodiagnostic testing that showed plaintiff's carpal tunnel to be mild on the left
2    side and absent from the right.  (AR 25; see AR 576-78).  The ALJ found that this
3    evidence supported lesser manipulative limitations than Dr. Yu had assessed.  (AR
4    25).  The ALJ also found that the longitudinal record supported greater climbing,
5    postural, and environmental limitations.  (AR 25).

6        As for the state agency medical consultants, the ALJ gave "some weight" to
7    Dr. Wilson's assessment, but "little weight" to that of Dr. Brodsky.  (AR 26).

8                        **4.    Analysis**

9        The ALJ provided specific and legitimate grounds to give little weight to the
10   opinion of plaintiff's treating physician, Dr. Foster.  First, the ALJ correctly found
11   that Dr. Foster failed to support or explain his assessment of extreme limitations.
12   (AR 25).  Indeed, as defendant points out, the only diagnoses Dr. Foster indicated
13   on the assessment are related to plaintiff's hands and wrists, and yet Dr. Foster
14   opined that plaintiff could only sit, stand, and walk for up to two hours a day,
15   among other restrictions that are unrelated to the upper extremity impairments,
16   without any explanation or support.  (AR 507-09).  The ALJ also reasonably found
17   that Dr. Foster's treatment notes "provide[d] few examination findings, usually
18   noting only tenderness of affected extremities."  (AR 25; see AR 447, 449, 488,
19   490, 492, 529).  The ALJ thus appropriately rejected Dr. Foster's opinion in part
20   due to its lack of explanation or support.  See Burrell v. Colvin, 775 F.3d 1133,
21   1140 (9th Cir. 2014) ("[A]n ALJ may discredit treating physicians' opinions that
22   are conclusory, brief, and unsupported by the record as a whole or by objective
23   medical findings.") (citation omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th
24   Cir. 2003) (ALJ properly rejected treating physician's opinion where "treatment
25   notes provide[d] no basis for the functional restrictions [physician] opined should
26   be imposed on [claimant]"); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.
27   1995) (inadequate clinical findings provide clear and convincing reasons for ALJ
28   to reject treating physician's opinion).

9

1    Second, the ALJ found that Dr. Foster's opinion was inconsistent with the
2  degree of treatment, which was limited mainly to opiate pain medications, referrals
3  for diagnostic imaging, and only scant specialist treatment after plaintiff last saw
4  her treating orthopedic surgeon in May 2015.  (AR 25; see AR 438, 441-43, 449).
5  This is a legitimate basis for giving little weight to the treating physician's
6  assessment.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may
7  reject opinion of treating physician who prescribed conservative treatment yet
8  opined that claimant was disabled); Weatherford v. Colvin, 2014 WL 5759905, *8
9  (E.D. Wash. Nov. 5, 2014) (ALJ properly rejected treating physician's opinion
10 based in part on conservative pain management and lack of referrals for further
11 evaluation by specialists).  Furthermore, the ALJ reasonably determined that Dr.
12 Foster's assessment of plaintiff's upper extremity limitations was inconsistent with
13 August 2018 electrodiagnostic testing of plaintiff's upper extremities, which
14 "show[ed] only mild left side carpal tunnel syndrome and no evidence of recurrent
15 right carpal tunnel syndrome."  (AR 25; see AR 576-78); see also Tommasetti v.
16 Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ may reject a treating physician's
17 opinion that is inconsistent with other medical evidence, including the physician's
18 own treatment notes).

19    The ALJ thus appropriately discounted Dr. Foster's opinion and instead
20 relied primarily on the assessment of the consultative examiner, Dr. Yu, which the
21 ALJ found to be more detailed and more consistent overall with the examination
22 findings and other evidence in the record.  (AR 25); see Thomas v. Barnhart, 278
23 F.3d 947, 957 (9th Cir. 2002) ("[T]he ALJ may reject the opinion of a treating
24 physician in favor of a conflicting opinion of an examining physician if the ALJ
25 makes "findings setting forth specific, legitimate reasons for doing so that are
26 based on substantial evidence in the record.") (quoting Magallanes v. Bowen, 881
27 F.2d 747, 751 (9th Cir. 1989)).
28 ///

10

1    Plaintiff contends that with respect to plaintiff's upper extremity limitations,
2  the ALJ "unfairly minimized" the opinions of both Dr. Foster and Dr. Yu.
3  (Plaintiff's Motion at 4).  However, the only notable way in which the ALJ's
4  assessment is less restrictive than that of Dr. Yu concerns plaintiff's manipulative
5  abilities.  Specifically, whereas Dr. Yu opined that plaintiff can only *occasionally*
6  engage in manipulative activities such as fingering, handling, feeling, and reaching
7  (AR 584), the ALJ found that plaintiff could engage in such activities *frequently*
8  (AR 21).  The ALJ supported this finding with substantial evidence in the record,
9  including recent imaging evidence that was unavailable to Dr. Yu, which showed
10 that plaintiff's carpal tunnel syndrome was mild on the left side and absent from
11 the right.  (AR 25; see AR 576-78).  The lesser manipulative restriction is also
12 supported by the opinions of the state agency medical consultants, who opined that
13 plaintiff had no manipulative limitations, and by Dr. Yu's own examination
14 findings of no muscle atrophy in the hands and full and painless range of motion
15 and no tenderness in the hands and wrists.  (AR 84, 96, 582); see also Tonapetyan
16 v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of nonexamining doctor
17 "may constitute substantial evidence when it is consistent with other independent
18 evidence in the record") (citation omitted).

19    Accordingly, plaintiff has failed to demonstrate any error in the ALJ's
20 assessment of the medical opinions and other evidence in determining plaintiff's
21 functional limitations.  Although plaintiff interprets the evidence differently, the
22 Court must uphold the ALJ's contrary findings, which are reasonable and
23 supported by substantial evidence in the record.  See Molina, 674 F.3d at 1111
24 ("Even when the evidence is susceptible to more than one rational interpretation,
25 we must uphold the ALJ's findings if they are supported by inferences reasonably
26 drawn from the record.").

27 ///
28 ///

11

1    **B.    The ALJ Did Not Err in Discounting Plaintiff's Subjective**

2         **Symptom Statements and Testimony**

3              **1.    Pertinent Law**

4         When determining disability, an ALJ is required to consider a claimant's

5    impairment-related pain and other subjective symptoms at each step of the

6    sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d).  Accordingly, when

7    a claimant presents "objective medical evidence of an underlying impairment

8    which might reasonably produce the pain or other symptoms [the claimant]

9    alleged," the ALJ is required to determine the extent to which the claimant's

10   statements regarding the intensity, persistence, and limiting effects of his or her

11   subjective symptoms ("subjective statements" or "subjective complaints") are

12   consistent with the record evidence as a whole and, consequently, whether any of

13   the individual's symptom-related functional limitations and restrictions are likely

14   to reduce the claimant's capacity to perform work-related activities.  20 C.F.R.

15   §§ 404.1529(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[4]  When an

16   individual's subjective statements are inconsistent with other evidence in the

17   record, an ALJ may give less weight to such statements and, in turn, find that the

18   individual's symptoms are less likely to reduce the claimant's capacity to perform

19   work-related activities.  See SSR 16-3p, 2017 WL 5180304, at *8.  In such cases,

20   when there is no affirmative finding of malingering, an ALJ may "reject" or give

21   less weight to the individual's subjective statements "only by providing specific,

22   clear, and convincing reasons for doing so."  Brown-Hunter, 806 F.3d at 488-89.

23   This requirement is very difficult to satisfy.  See Trevizo, 871 F.3d at 678 ("The

24   ///

25   _____

26        [4]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the
     term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective

27   symptom evaluation is not an examination of an individual's [overall character or truthfulness]
     . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  See

28   SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

1  clear and convincing standard is the most demanding required in Social Security
2  cases.") (citation and quotation marks omitted).

3      An ALJ's decision "must contain specific reasons" supported by substantial
4  evidence in the record for giving less weight to a claimant's statements.  SSR 16-
5  3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective
6  statement being rejected and the particular evidence in the record which
7  purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation
8  omitted).  Unless there is affirmative evidence of malingering, the Commissioner's
9  reasons for rejecting a claimant's testimony must be "clear and convincing."
10  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (internal quotation marks
11  omitted), as amended (Apr. 9, 1996).  "General findings are insufficient[.]"
12  Reddick, 157 F.3d at 722 (citations omitted).

13      If an ALJ's evaluation of a claimant's statements is reasonable and is
14  supported by substantial evidence, it is not the court's role to second-guess it.  See
15  Thomas, 278 F.3d at 959 (citation omitted).  When an ALJ fails properly to discuss
16  a claimant's subjective complaints, however, the error may not be considered
17  harmless "unless [the Court] can confidently conclude that no reasonable ALJ,
18  when fully crediting the testimony, could have reached a different disability
19  determination."  Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492
20  (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will
21  usually not be harmless").

22              **2.    Plaintiff's Subjective Statements**

23      Plaintiff alleged the following in her exertion questionnaire on September 1,
24  2015:  She has "[b]asically no use" of her right hand.  (AR 299).  She really does
25  not do any activities because it is hard to do things with just one hand.  (AR 299).
26  She does not walk, and sometimes has difficulty climbing the four steps on the
27  porch due to her knees.  (AR 300).  She does not lift anything, but can carry light
28  plastic grocery bags with just her left hand.  (AR 300).  She does not shop for

1 groceries, clean the house, or do yard work.  (AR 300).  She tries to do housework

2 and other chores, but it is really hard without the use of her right hand, so she

3 really does not do very much.  (AR 301).  She can drive but only close to her

4 house, and otherwise her daughter drives her for appointments or shopping.  (AR

5 300).  She sleeps only three to four hours a day, but she rests all day.  (AR 301).

6      Plaintiff alleged the following in her exertion questionnaire on April 5,

7 2016:  She has "[b]asically no use" of her right hand (AR 319), and can lift

8 "[b]asically nothing" with it (AR 320).  She can carry some things with her left

9 hand, such as a coffee cup, a dinner plate, or a plastic bag.  (AR 320).  She walks

10 only in the house.  (AR 319).  Her children do the housework, though she helps as

11 best she can.  (AR 320).  When she's doing an activity, she has to rest after about

12 fifteen minutes due to the pain.  (AR 321).  She can pull weeds with her left hand

13 for short periods, but must do it carefully.  (AR 320).

14      Plaintiff alleged the following in her hearing testimony on October 26, 2018

15 (AR 53-70):  She stopped working because she needed surgery on her right hand.

16 (AR 53).  The surgery did not help, so she still basically has no use of her right

17 hand, and cannot use it to pick up things such as a coffee pot because the hand

18 shakes badly.  (AR 54-55).  She can do some things with her left hand but is

19 extremely careful.  (AR 55).  She can write with her left hand, but just a little

20 before the pain becomes too much.  (AR 60-61).  She also has pain in her shoulders

21 that prevents her from lifting her arms high, as well as increased back pain, hip

22 pain that radiates down her legs, and a problem with her right foot.  (AR 57-58).

23 As far as household chores, it takes her a long time to do dishes or laundry because

24 she has to be very careful.  (AR 56, 60).  She cooks meals with her teenage sons,

25 but she cannot cut or slice due to a lack of strength in her right hand.  (AR 56, 58).

26 Her sons usually do the cleaning.  (AR 60).  She can drive by utilizing her left

27 hand, and cannot take curves with her right hand.  (AR 59).  She shops for

28 groceries with her sons, who help lift and carry the groceries.  (AR 59).  She

14

cannot lift the dog food or "anything of any weight." (AR 59). She can lift a gallon of milk but must do it carefully by grabbing the handle in a certain way. (AR 59-60).

### 3. ALJ's Assessment of Plaintiff's Statements

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence of record. (AR 22).

Among other grounds, the ALJ determined that plaintiff's alleged limitations conflicted with her own prior statements and reported activities. For example, while plaintiff stated she basically had no use of the right hand, the ALJ found this inconsistent with plaintiff's reported activities of cooking, driving, shopping, doing laundry, and lifting a gallon of milk. (AR 22). Moreover, the ALJ found that plaintiff had made apparently contradictory statements about the use of hands. On March 30, 2015, for example, plaintiff told her doctor she was performing activities with her right hands despite post-surgical swelling, but just nine days later (April 8) she told her orthopedic surgeon that she was not using her right hand at all. (AR 22; see AR 384, 402).

In addition, the ALJ found that the severity of plaintiff's alleged exertional limitations was inconsistent with references in the treatment record to her engaging in exercise activities. Specifically, the ALJ noted that plaintiff reported to her doctor in June 2016 and May 2018 that she spent thirty minutes a day exercising or doing activities such as walking or gardening, and her primary care provider, Dr. Foster, "frequently encouraged [plaintiff] to exercise regularly during the alleged period of disability." (AR 26; see AR 486, 534, 547, 568, 570).

The ALJ also found that the extreme limitations alleged were not adequately supported by the medical evidence in the record, particularly with respect to

15

plaintiff's hands and wrists, which were the main concern of her subjective complaints. The ALJ noted, for example, that plaintiff had normal grip strength upon examination in 2016, and the consultative examination in December 2018 revealed no muscle atrophy, intact motor strength, and "well-preserved hand functions for fine and gross manipulations." (AR 22; see AR 542, 582-83). The ALJ also noted diagnostic testing from August 2018 showing mild carpal tunnel syndrome in the left wrist and no recurrent carpal tunnel on the right. (AR 22; see AR 576-78).

The ALJ similarly found a lack of adequate support in the record regarding plaintiff's other alleged symptoms. For example, regarding plaintiff's complaints of back pain, the ALJ noted that plaintiff had not alleged this problem in her initial disability report, and examinations showed normal neurological function, intact strength and sensation, and no tenderness or spasm of the lumbar spine. (AR 23; see AR 384, 429, 492, 525, 527, 542, 582-83). The ALJ noted that plaintiff's complaints of neck pain "have been somewhat intermittent, and frequently appear in the context of reports of shoulder pain." (AR 23; see AR 405, 580). The ALJ further found that while there was some imaging evidence of cervical spondylosis, recent examinations revealed normal and painless range of motion in the neck, with no significant tenderness and spasm. (AR 23-24; see AR 374, 467, 581). As for complaints of hip pain, the ALJ acknowledged some supportive recent MRI evidence, but noted that Dr. Yu's consultative examination showed full range of motion of the hips with no tenderness on palpation. (AR 24; see AR 572-73, 582). However, because plaintiff's lower extremity symptoms were at least somewhat supported in the clinical and imaging evidence, the ALJ "construed the evidence in the light most favorable to [plaintiff]," including all the evidence of abnormalities in the left hip, lower left extremity, and right foot, by limiting plaintiff to four hours of standing or walking, among other restrictions. (AR 24).

///

16

1    The ALJ also noted that the degree of plaintiff's treatment did not support
2    the severity of her alleged symptoms, particularly with respect to her complaints of
3    shoulder pain.  The ALJ noted that while imaging studies and examinations
4    revealed some abnormalities, including bilateral impingement in Dr. Yu's
5    consultative orthopedic examination, plaintiff mainly treated this symptom by
6    taking opiate pain medication, and the primary care treatment notes did not
7    demonstrate any impingement signs or other clinical signs of shoulder dysfunction.
8    (AR 23; see AR 461, 465, 581, 583).  Due to the lack of "more intensive treatment
9    and more frequent examination signs of dysfunction," the ALJ "relied more
10   heavily" on Dr. Yu's consultative examination assessment of plaintiff's ability to
11   lift and carry, while also construing the evidence in plaintiff's favor by providing
12   for greater limitations in reaching and climbing.  (AR 23).

13                        **4.    Analysis**

14       The ALJ provided specific, clear and convincing reasons to discount
15   plaintiff's subjective symptom statements on the basis that they are inconsistent
16   overall with the evidence of record.  Plaintiff contends that "[a]ny inconsistencies
17   perceived by this [ALJ] are the result of either misinterpretation or manipulation of
18   the facts." (Plaintiff's Motion at 13).  However, the Court must uphold the ALJ's
19   findings where, as here, they are reasonable and "supported by inferences
20   reasonably drawn from the record."  Molina, 674 F.3d at 1111.

21       First, the ALJ reasonably determined that plaintiff's activities conflicted
22   with her alleged symptoms.  Plaintiff contends that she has not engaged in
23   activities "which in any way equate to full time competitive employment at any
24   exertional level." (Plaintiff's Motion at 12).  However, "[e]ven where [a
25   claimant's] activities suggest some difficulty functioning, they may be grounds for
26   [giving less weight to] the claimant's testimony to the extent that they contradict
27   claims of a totally debilitating impairment."  Molina, 674 F.3d at 1113 (citations
28   omitted); see also Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014)

17

1  (inconsistencies between alleged limitations and claimant's reported activities valid

2  reason for giving less weight to claimant's subjective complaints) (citation

3  omitted); SSR 16-3p, 2016 WL 1119029, at *7 (ALJ may determine that

4  claimant's symptoms "are less likely to reduce his or her capacities to perform

5  work-related activities" where claimant's subjective complaints are inconsistent

6  with evidence of claimant's daily activities) (citing 20 C.F.R. §§ 404.1529(c)(3),

7  416.929(c)(3)).  Here, the ALJ noted that plaintiff has been able to engage in

8  cooking, driving, shopping, and doing laundry, despite alleging that she has

9  basically no use of her right hand.  (AR 22).  Although plaintiff indicated that she

10  had limited use of her right hand during these activities – such as not using her

11  right hand to slice while cooking, and not taking curves with her right hand while

12  driving – it was reasonable for the ALJ to infer that plaintiff otherwise uses both

13  hands to complete these tasks, and her ability to do so conflicts with her allegations

14  that she had basically no use of the right hand.  The ALJ also reasonably found that

15  plaintiff's allegations of very limited exertional abilities were in conflict with

16  reports in 2016 and 2018 that she spent thirty minutes a day exercising or doing

17  activities such as walking or gardening, along with her primary care provider's

18  consistent recommendations for regular exercise.  (AR 26; see AR 486, 534, 547,

19  568, 570).

20  The ALJ also found that plaintiff had made conflicting statements in the

21  record regarding the extent of her activities.  For example, the ALJ noted that on

22  March 30, 2015, plaintiff told her doctor she was performing activities with her

23  right hands despite post-surgical swelling, but just nine days later (April 8) she told

24  her orthopedic surgeon that she was not using her right hand at all.  (AR 22;

25  see AR 384, 402).  The ALJ reasonably construed these reports as inconsistent,

26  which is a valid ground for discounting a claimant's statements.  See Ghanim, 763

27  F.3d at 1163.

28  ///

18

1   In addition, the ALJ properly discounted the extent of plaintiff's alleged

2   shoulder impairment in part due to the lack of the "more intensive treatment" other

3   than taking opiate medication prescribed by the primary care physician.  (AR 23);

4   see Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006)

5   ("Impairments that can be controlled effectively with medication are not disabling

6   for the purpose of determining eligibility for SSI benefits."); Johnson v. Shalala, 60

7   F.3d 1428, 1434 (9th Cir. 1995) (an ALJ may properly rely on the fact that

8   prescribed conservative treatment suggests a lower level of both pain and

9   functional limitation).

10   Finally, the ALJ appropriately considered a lack of supporting objective

11   medical evidence.  The ALJ supported this with specific explanations and detailed

12   references to medical examination and imaging evidence in the record.  (AR 22-

13   25).  Although not sufficient on its own, this is a valid basis for discounting the

14   extent of plaintiff's subjective complaints.  See Burch v. Barnhart, 400 F.3d 676,

15   681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis

16   for discounting pain testimony, it is a factor that the ALJ can consider in his

17   credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

18   ("While subjective pain testimony cannot be rejected on the sole ground that it is

19   not fully corroborated by objective medical evidence, the medical evidence is still a

20   relevant factor in determining the severity of the claimant's pain and its disabling

21   effects."); SSR 16-3p, *5 ("objective medical evidence is a useful indicator to help

22   make reasonable conclusions about the intensity and persistence of symptoms,

23   including the effects those symptoms may have on the ability to perform

24   work-related activities"); 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence

25   . . . is a useful indicator to assist us in making reasonable conclusions about the

26   intensity and persistence of your symptoms and the effect those symptoms, such as

27   pain, may have on your ability to work.").

28   ///

1    Accordingly, the ALJ provided specific, clear and convincing reasons to

2  reject plaintiff's subjective symptom statements and testimony.  Plaintiff has failed

3  to identify any material error in the ALJ's decision, which is supported by

4  substantial evidence in the record.[5]

5  **V.    CONCLUSION**

6    For the foregoing reasons, the decision of the Commissioner of Social

7  Security is AFFIRMED.

8    LET JUDGMENT BE ENTERED ACCORDINGLY.

9  DATED:   April 4, 2021

10                                    _____/s/_____

11                                    Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17  _____

18    [5]Although she does not raise it as a separate issue, plaintiff additionally disputes the
    ALJ's determination that the "cashier II" job qualified as past relevant employment.  (Plaintiff's

19  Motion at 16-17).  Plaintiff argues that her cashier position at Circle K does not qualify because
    she last worked in the position in 2001, more than fifteen years before the ALJ's decision.  (Id. at

20  16); see 20 C.F.R. § 404.1560(b)(1) (past relevant work is any work that a claimant performed in
    the past fifteen years, that was substantial gainful activity, and that lasted long enough for the

21  claimant to learn to do it).  However, plaintiff testified that she continued to perform similar
    duties at Circle K until July 2004, serving as assistant manager and then as manager.  (AR 61-62,

22  293).  As the ALJ noted, plaintiff "reported that she did 'everything' as a manager, which would
    have logically included continuing job duties as a cashier."  (AR 27; see AR 293).  The ALJ thus

23  reasonably determined that, "to the extent that [plaintiff's] work as a cashier may have slightly
    preceded the relevant 15 year period . . . , the evidence establishes 'a continuity of skills,

24  knowledge, and processes' between the cashier position and [plaintiff's] more recent manager
    occupation."  (AR 27) (quoting SSR 82-62 ("work performed prior to the 15-year period may be

25  considered as relevant when a continuity of skills, knowledge, and processes can be established
    between such work and the individual's more recent occupations")).  Substantial evidence

26  therefore supports the ALJ's reasonable determination that plaintiff had past relevant work as a
    "cashier II."

27

28